<div style="float:left">United States District Court<br>For the Northern District of California</div>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONZO EVANS,<br><br>       Petitioner,<br><br>  v.<br><br>DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS,<br><br>       Respondent.<br>_____ / | No. C-03-2498 MMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING MOTION FOR EXTENSION OF TIME; DENYING REQUEST FOR EVIDENTIARY HEARING**<br><br>(Docket Nos. 36, 38) |

      Petitioner, a California prisoner, filed the above-titled pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After an initial review, the Court ordered respondent to show cause why the petition should not be granted based on the following claims: (1) that he was deprived of his constitutional right to a speedy trial; (2) that his constitutional right to due process was violated when the trial court allowed the prosecution's witnesses to observe petitioner in shackles and jail clothing; (3) that his constitutional right to due process was denied when the trial court denied his request for a continuance to retain private counsel; and (4) that his right to counsel and to due process were violated because his trial and appellate counsel provided ineffective assistance. Respondent has filed an answer, accompanied by a memorandum and exhibits. Petitioner has filed a traverse.

## PROCEDURAL BACKGROUND

Petitioner was charged in San Mateo County Superior Court with petty theft, along with allegations of numerous prior felony convictions. In a bench trial, he was found guilty of petty theft with a prior theft conviction, and sentenced to thirty-two months in state prison. Petitioner filed both a direct appeal and a petition for a writ of habeas corpus in the California Court of Appeal. The Court of Appeal affirmed the conviction and sentence, and denied the petition. The California Supreme Court subsequently denied the petition for review and a separate petition for a writ of a habeas corpus. The instant federal habeas petition followed. Petitioner subsequently filed numerous motions with this Court. Most recently, petitioner filed, on April 13, 2005, a Motion Requesting a Sixty-Day Continuance in Support of Filing a Motion for an Evidentiary Hearing Pursuant to the Order to Show Cause, and thereafter, on April 20, 2005, a Motion Requesting an Evidentiary Hearing.

## FACTUAL BACKGROUND

Danny Allegre ("Allegre"), a security guard for a Home Depot store in Colma, California ("Home Depot"), gave the following testimony about events occurring on the afternoon of June 19, 1999. Allegre first saw petitioner selecting a pair of gloves in the hardware department of Home Depot. Allegre followed petitioner to the plumbing department and watched petitioner select a sprinkler timer from the shelf. Allegre then observed petitioner walk to the back of the store, where the glass door aisle is located. Allegre saw petitioner hide himself between the glass doors, conceal the sprinkler timer inside his pants and adjust his jacket to cover it. Allegre next saw petitioner put the leather gloves into his back pants pocket and similarly conceal them under his jacket. Allegre then watched petitioner proceed through the lumber department and leave the store without paying for the items.

Allegre approached petitioner outside Home Depot. Allegre showed petitioner his identification as a loss prevention officer and asked petitioner about the unpaid items inside his pants. Petitioner apologized to Allegre, who then took petitioner to Home Depot's loss prevention office. Allegre searched petitioner and retrieved the sprinkler timer in the front of his pants and the pair of leather gloves in his back pants pocket. The price of the sprinkler

timer was $69.97, and the price of the gloves was $9.97. Petitioner was taken to the Colma Police Station by Colma police officer John Sperisen ("Officer Sperisen"), and was released on the same day after signing a "Notice to Appear" in which he promised to appear in San Mateo County Superior Court on July 12, 1999.

The San Mateo County District Attorney filed a complaint against petitioner on July 7, 1999. Petitioner thereafter failed to appear in court on July 12, 1999, and a warrant was issued for his arrest. On April 11, 2000, petitioner was arrested on the warrant. On April 25, 2000, he was held to answer for petty theft with prior felony and theft convictions; on May 8, 2000, an information was filed. Petitioner waived a jury and on August 30, 2000 was found guilty in a court trial.

## DISCUSSION

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a); see also Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 402-03 (2000). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." See Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). A federal court must presume the correctness of the state court's factual findings. See 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court gives no reasoned explanation of its decision

on a petitioner's federal claim, and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. See id.; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

B.  Legal Claims

    1.  Speedy Trial

Petitioner claims that his constitutional right to a speedy trial was violated. In particular, petitioner claims he filed a speedy trial demand pursuant to California Penal Code § 1381, while serving a 90-day sentence in the Alameda County jail for an unrelated petty theft conviction. Petitioner claims he delivered the speedy trial demand to Alameda County jail officials to mail while he was in their custody. After petitioner completed his 90-day sentence in Alameda County, he traveled to Canada. After his return to the United States, petitioner was arrested on the above-referenced warrant for failure to appear in court on the instant charges.[1] Petitioner claims that he told his trial counsel on numerous occasions about his speedy trial demand, but that his trial counsel failed to inform the trial court.[2] Petitioner also claims that at his sentencing hearing, he informed the trial court about his speedy trial objection, but that the trial court did not resolve the issue.

California Penal Code §§ 1381-1383 contain the state's statutory scheme to ensure speedy trials. Because a violation of state law or procedure does not give rise to a

---

[1] Petitioner was arrested for petty theft in Alameda County after his initial arrest in San Mateo County on the instant charges. Petitioner was convicted in Alameda County of petty theft and served a 90-day sentence for that crime prior to his conviction in San Mateo County. Neither party indicates, nor does the Court find in the record, any information as to when petitioner began serving his sentence at the Alameda County Jail, when he was released, when he traveled to Canada, how long he stayed in Canada, or when he reentered the United States.

[2] Petitioner's ineffective assistance claims are discussed infra.

cognizable claim in federal habeas proceedings, see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding federal habeas corpus is not available for claims based on violations of state law or procedure), the question for the Court is whether petitioner was denied his federal right to a speedy trial.[3]

In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth a "balancing test" for use in analyzing speedy trial claims. See id. at 530. The Barker test makes "four separate enquiries": "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result." See Dogget v. United States, 505 U.S. 647, 651 (1992).

"To determine whether a defendant's constitutional right to a speedy trial has been violated, a court must first determine whether the delay was 'presumptively prejudicial.' Only if this threshold is met need the court engage in the complete Barker balancing test." United States v. Murillo, 288 F.3d 1126, 1132 (9th Cir. 2002); see Barker v. Wingo, 407 U.S. at 530. The Ninth Circuit has found that a delay of thirteen months between arrest and trial is "presumptively prejudicial," thus triggering a Barker inquiry, see Murrillo, 288 F.3d at 1132, while a six-month delay between arrest and trial constitutes a "borderline case," see United States v. Lam, 251 F.3d 852, 856 (9th Cir. 2001). Here, the period between petitioner's arrest and trial was approximately fourteen months.[4] Such delay is presumptively prejudicial, and, accordingly, the Court next inquires into the other Barker factors in evaluating petitioner's speedy trial claim.

The second factor entails an examination of the reasons for the delay. The Court must consider "whether the government or the criminal defendant is more to blame" for such delay.

---

[3] For the reasons stated infra, there is no violation of California Penal Code § 1381 here, because such statute does not apply to persons, such as petitioner, serving a sentence of 90 days or less.

[4] On June 19, 1999, petitioner was taken into custody for the Home Depot petty theft and was cited and released that same date. This procedure is deemed an "arrest." See Cal. Penal Code § 853.6. Petitioner's court trial began on August 29, 2000.

See Doggett, 505 U.S. at 651.  The government bears the burden of explaining pretrial delays.  See McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).  A delay resulting from negligence on the part of the government, although weighing less heavily than a deliberate attempt to hamper the defense, nevertheless must be considered.  "On the other hand, delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendants' speedy trial argument."  See id.  In the instant case, respondent contends that petitioner caused the delay by failing to appear in court as required by his signed Notice to Appear.[5]  Petitioner admits that after he was arrested for the instant petty theft in San Mateo County, he committed a crime in Alameda County, which resulted in his serving a 90-day sentence in the Alameda County Jail.  Assuming petitioner made a § 1381 demand during that time, petitioner nonetheless admits that after his release from the Alameda County Jail, he traveled to Canada, without inquiring about the status of his case in San Mateo County.  In his traverse, petitioner states that he surrendered on the San Mateo County warrant when he returned to the United States.  As noted, petitioner was arrested on that warrant on April 11, 2000, and was held to answer on April 25, 2000.  On May 10, 2000, he was arraigned on the information and trial was set to commence on June 26, 2000.  Thereafter, at his pretrial conference on June 13, 2000, petitioner waived time for trial and the trial was rescheduled for August 28, 2000.  The record does not indicate that the district attorney asked for any extensions of time to prepare for trial or was otherwise responsible for any delay in bringing the case to trial once petitioner was arrested on the warrant.  As for the period between petitioner's initial arrest and re-arrest, given the above-described circumstances, the Court finds any delay was attributable in large part to petitioner's own acts.  Consequently, the second factor does not weigh in petitioner's favor.

  The Court next considers petitioner's assertion of his right to a speedy trial.  This assertion "must be viewed in light of his other conduct."  See United States v. Loud Hawk, 474 U.S. 302, 314 (1986).  Here, petitioner made no effort before trial to invoke his speedy trial

---

[5] As noted, petitioner promised to appear in San Mateo County Superior Court on July 12, 1999.  (See Respondent's Ex. A at 4.)

rights other than in his demand under Penal Code § 1381, which statute, as discussed infra, was not applicable to him. Thereafter, petitioner left the country, without inquiring about the status of his case in San Mateo County or in any other fashion indicating his willingness to proceed on those charges. See, e.g., Doggett, 505 U.S. at 653 (observing that if defendant had been aware of the indictment before he left the United States, his failure to invoke his speedy trial rights would have "weighed heavily against him"). Following his arrest for failure to appear, there is only one occasion, at petitioner's sentencing, in which petitioner raised a speedy trial claim in the trial court. This factor does not weigh in petitioner's favor. See Lam, 251 F.3d at 859.

Finally, the Court considers whether petitioner was actually prejudiced by the delay in his trial. Actual prejudice typically is shown in three ways: "[1] oppressive pretrial incarceration, [2] anxiety and concern of the accused, and [3] the possibility that the accused's defense will be impaired." See Gregory, 322 F.3d 1157, 1163 (9th Cir. 2003) (internal quotation and citation omitted). Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," and "not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself." See id. (internal quotation and citation omitted). Here, petitioner does not claim that he suffered any oppressive pretrial incarceration stemming from any delay of the trial of his case, nor does petitioner claim that any delay caused him to suffer anxiety or concern. Significantly, petitioner does not claim that any exculpatory evidence or favorable witnesses were lost due to the delay. Under such circumstances, petitioner has not shown that he was actually prejudiced by any delay of his trial, and thus this factor does not weigh in petitioner's favor.

Accordingly, under the factors set forth in Barker, petitioner's right to a speedy trial was not violated, and consequently, petitioner is not entitled to habeas relief on this claim.

2. Shackling and Jail Clothing

Petitioner claims that the trial court violated his right to due process by allowing Allegre to observe petitioner in shackles and jail clothing prior to taking the witness stand. Petitioner claims these observations caused Allegre's identification of petitioner to be tainted and

7

1 unreliable.

2 Petitioner concedes that the record does not reflect that shackles were actually visible to Allegre. The trial transcript does reflect Allegre's identification of petitioner in court as "wearing an orange sweat shirt," which petitioner states is jail clothing. Even assuming petitioner was seen both in shackles and jail clothing by Allegre, petitioner is not entitled to relief on this claim. Although, the United States Supreme Court has held that a defendant's right to due process may be violated when jurors view him in shackles, see Holbrook v. Flynn, 475 U.S. 560 (1986),[6] the Court is aware of no Supreme Court precedent or any other federal authority, and petitioner cites none, providing that a defendant's right to due process, or any other constitutional right, is violated when a prosecution witness sees a defendant in shackles. As explained above, habeas relief is only available on the basis of a violation of federal law, as set forth by the United States Supreme Court. See 28 U.S.C. § 2254(d)(1); see also Williams, 529 U.S. at 412 ("Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."). Further, as discussed infra, there is no reasonable possibility that Allegre's identification of petitioner was in any manner tainted by the circumstances under which he observed petitioner in the courtroom.

Accordingly, petitioner is not entitled to habeas relief on this claim.

3. Request for Continuance

Petitioner claims the trial court improperly denied his request for a continuance to substitute counsel. According to petitioner, he had sufficient funds to retain an attorney, in that he had a job and his supervisor had agreed to either provide him with an attorney or provide funds to obtain private counsel of his choice. Petitioner claims he informed the trial court that he wanted a new attorney to replace his appointed counsel. According to petitioner, the trial court allowed him to make a phone call to locate new counsel, but that the time allowed was insufficient.

The Sixth Amendment right to counsel includes a qualified right to have counsel of the

---

[6] There was no such risk in this case, as petitioner waived his right to a jury and was tried by the court.

1  defendant's choice, provided the defendant is able to pay for such representation and the
2  chosen attorney is willing to serve. See Wheat v. United States, 486 U.S. 153, 159 (1988).
3  When a requested continuance arguably implicates a defendant's Sixth Amendment right to
4  counsel, such as a request for a continuance to substitute counsel of choice, the trial court
5  must consider the effect of its decision on this fundamental right. See United States v. Garrett,
6  179 F.3d 1143, 1145 (9th Cir. 1999) (en banc). In Garrett, the Ninth Circuit held the
7  defendant's Sixth Amendment right to counsel was not abridged by the trial court's denial of a
8  request for a continuance made on the eve of trial and where the trial court had conducted a
9  number of hearings on the defendant's repeated requests regarding substitution of counsel.
10  See id.

11  Here, as in Garrett, the trial court did not violate petitioner's Sixth Amendment rights by
12  denying his request for a continuance. On August 29, 2000, prior to the commencement of his
13  court trial, petitioner made a Marsden motion. The judge before whom that motion was made
14  conducted a "Marsden hearing,"[7] addressed petitioner's complaints about his attorney, and
15  ultimately denied petitioner's motion.[8] The case then was assigned to another judge for trial,
16  and petitioner, that same morning, moved to continue his trial date. The trial judge granted
17  petitioner a continuance of approximately three hours to make a phone call in order to secure
18  new counsel for the trial; when petitioner failed to do so, the trial judge denied petitioner's
19  motion for a continuance and began the trial that afternoon. The record demonstrates that, on
20  the date trial was to begin, a judge conducted a hearing with respect to petitioner's complaints
21  about his attorney, and that the trial judge, despite the last-minute nature of the request,
22  granted a short continuance to afford petitioner the opportunity to obtain private counsel. In
23  essence, the trial court "acted within its broad discretion" in denying a motion for a

---

[7] See People v. Marsden, 2 Cal.3d 118 (1970) (holding trial court must give defendant opportunity to present argument or evidence in support of contention that trial attorney is incompetent).

[8] The transcript of that hearing is Exhibit A to the petition filed in Case No. C 02-2033 and cross-referenced in petitioner's traverse in the instant action. Accordingly, the Court considers that transcript as part of the record herein.

continuance made, in the first instance, on the day of trial, where the prosecution's witnesses were present, and where no private counsel had been identified, let alone retained. See id. at 1145. Under such circumstances, petitioner's Sixth Amendment right to counsel was not violated, and habeas relief is not available on this claim.

### 4. Ineffective Assistance of Counsel

Petitioner claims he is entitled to habeas relief because his trial and appellate counsel provided ineffective assistance. Specifically, petitioner claims that his trial counsel: (1) failed to object to Officer Sperisen's hearsay testimony at the preliminary hearing, and then failed to move for dismissal based upon insufficient evidence; (2) failed to object to petitioner's appearance in jail clothing and shackles during his court trial; (3) failed to object to the prosecution's introduction of a Polaroid photograph of the items taken from Home Depot;[9] and (4) failed to inform the trial court that petitioner filed a speedy trial demand under California Penal Code § 1381, and to move for a dismissal pursuant to that section. Petitioner claims that his appellate counsel was ineffective in failing to raise these issues on appeal.

A claim of ineffective assistance of trial counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. See id. at 688. In that regard, the relevant inquiry is not what defense counsel could have presented, but rather whether the choices made by defense counsel were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that,

---

[9] Petitioner concedes in his traverse that his trial counsel did not provide ineffective assistance by failing to object to the prosecution's introduction of the Polaroid photograph as evidence. Accordingly, the Court does not address this claim.

10

1  but for counsel's unprofessional errors, the result of the proceeding would have been
2  different." See Strickland, 466 U.S. at 694.  A reasonable probability is a probability sufficient
3  to undermine confidence in the outcome.  See id.  A court need not determine whether
4  counsel's performance was deficient before examining the prejudice suffered by the
5  defendant as the result of the alleged deficiencies.  See id. at 697; Williams v. Calderon, 52
6  F.3d 1465, 1470 & n.3 (9th Cir. 1995) (noting with approval district court's refusal to consider
7  whether counsel's conduct was deficient after determining petitioner could not establish
8  prejudice).

9        The failure to object to the admission of highly prejudicial evidence against the
10  defendant may constitute ineffective assistance of counsel.  See, e.g., Crotts v. Smith, 73 F.3d
11  861, 866-67 (9th Cir. 1996) (finding counsel ineffective for failing to object to testimony
12  suggesting, incorrectly, that defendant had been convicted of killing a police officer).  Counsel,
13  however, need not make an objection or file a motion that he knows to be meritless on the
14  facts and the law.  See Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.), cert. denied, 513 U.S.
15  1001 (1994) (finding failure to file suppression motion not ineffective assistance where
16  counsel considered filing motion and no reasonable possibility evidence would have been
17  suppressed); see also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (holding failure to
18  take futile action can never be deficient performance).

19        Here, trial counsel was not deficient in failing either to object to Officer Sperisen's
20  testimony at the preliminary hearing or to seek dismissal based on insufficient evidence.
21  Under California law, officers with more than five years of law enforcement experience, such
22  as Officer Sperisen, are allowed to testify to hearsay statements at the preliminary hearing.
23  See California Penal Code § 872(b).  Consequently, a hearsay objection to the admission of
24  Officer Sperisen's testimony would have been futile.  Similarly, because Officer Sperisen's
25  hearsay testimony as to what Allegre had witnessed was admissible, there was sufficient
26  evidence at the preliminary hearing to hold petitioner to answer for the charges, and a motion
27  to dismiss the indictment for insufficient evidence likewise would have been futile.

28        Next, trial counsel's failure to object to petitioner's jail clothing and shackles did not

11

prejudice petitioner. As noted, no jurors were present because the charges were tried to the court. Moreover, Allegre's contact with petitioner was substantial, thus providing an independent basis for his identification. See Manson v. Brathwaite, 432 U.S. 98, 114 (holding witness's opportunity to observe defendant at time of incident one of factors in assessing reliability of identification); see also United States v. Wang, 49 F.3d 502, 505 (9th Cir. 1995) (holding identification of defendant from photographs reliable where witness had ample opportunity to view defendant and actually spoke with him). Further, petitioner was observed committing the theft and was arrested immediately thereafter in possession of the stolen items. Under such circumstances, identity of the perpetrator was not a meaningful issue, even assuming the witness observed petitioner in jail clothing and shackles. Accordingly, petitioner has failed to show there was a reasonable likelihood that his jail clothing and shackling affected the verdict.

As discussed, petitioner claims that while he was in the Alameda County Jail, he delivered to Alameda County jail officials, for mailing, a speedy trial demand pursuant to California Penal Code § 1381. Petitioner claims he informed trial counsel of this speedy trial demand on numerous occasions, and that he complained to counsel about counsel's failure to inform the trial court and move for dismissal of the charges.[10] Counsel's failure to pursue a motion to dismiss under California Penal Code § 1381 was neither unreasonable nor prejudicial to petitioner because such motion would have failed. Section 1381 provides, in relevant part:

> Whenever a defendant has been convicted, in any court of this state, of the commission of a . . . misdemeanor and . . . has been sentenced to and has entered upon a term of imprisonment in a county jail for a period of more than 90 days . . . and at the time of the entry upon such term of imprisonment . . . there is pending, in any court of this state, . . . any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which such matters are pending shall bring the same defendant to trial or for a sentencing within 90 days after such person shall have delivered to said district attorney written notice of the place of his imprisonment . . . and his desire to be brought to trial or for a sentencing unless a continuance beyond said

---

[10] As noted by respondent, the demand was never filed in the San Mateo County Superior Court. It does not appear in the record, and the San Mateo County Clerk specifically certified to the California Court of Appeal that no such demand could be located. (See Ex. D.)

> 90 days is requested or consented to by such person, in open court, and such request or consent entered upon the minutes of the court . . . . In the event that the defendant is not brought to trial or for sentencing within the 90 days as herein provided the court in which such charge or sentencing is pending must, on motion . . . of the defendant . . . dismiss such action . . . .

See Cal. Penal Code § 1381. Here, petitioner was sentenced to 90 days in the Alameda County Jail; he was not sentenced to "more than 90 days," as required to fall within the purview of § 1381. Consequently, even if petitioner's attorney had moved to dismiss on the basis of § 1381, there is no likelihood that such motion would have succeeded. See e.g. People v. Brussel, 108 Cal.App.3d 712, 716-717 (1980). Accordingly, any failure by counsel to file a motion pursuant to California Penal Code § 1381 was neither deficient performance nor prejudicial to petitioner.

Finally, petitioner claims that his appellate counsel provided ineffective assistance by failing to raise on appeal the claims of ineffective assistance of trial counsel raised herein. Due process requires that appellate counsel provide effective assistance to an indigent client. See Evitts v. Lucey, 469 U.S. 387, 395-96 (1985). Claims of ineffective assistance of appellate counsel are analyzed according to the Strickland standard, namely, that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel' s performance, the outcome on appeal would have been different. See Miller v. Keeney, 882 F.2d 1428, 1433-34 (9th Cir. 1989). Petitioner cannot demonstrate prejudice from appellate counsel's failure to raise the ineffective assistance of counsel claims raised herein because, for the reasons discussed above, these claims are without merit. Appellate counsel does not have a constitutional duty to raise every issue requested by a defendant. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10. "[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller, 882 F.2d at 1434 (internal quotation and citation omitted). Consequently, appellate counsel frequently, as is the case here, will both remain above an objective standard of competence and have caused petitioner no prejudice because he

declined to raise a weak issue.  See id.

Accordingly, petitioner is not entitled to habeas relief on his claims of ineffective assistance of trial and appellate counsel.

C.   Motion for Evidentiary Hearing

Petitioner has filed a motion for an evidentiary hearing.  The motion describes the documents in the state court record, which have already been submitted to, and considered by, the Court.  Petitioner asserts in conclusory fashion that an evidentiary hearing is necessary to "substantiate" his claims.  He does not indicate, however, what evidence he would submit in such a hearing, nor does he explain how any such evidence would make a difference with respect to the analysis of his claims.  For the reasons explained above, the claims in the petition can be resolved without holding an evidentiary hearing.  Accordingly, petitioner's motion will be denied.

## CONCLUSION

In light of the foregoing, the petition for a writ of habeas corpus is DENIED.  Petitioner's motion for an extension of time in which to file a motion for an evidentiary hearing and motion for an evidentiary hearing are DENIED.

This order terminates Docket Nos. 36 and 38.

The Clerk shall close the file and terminate any pending motions in this matter.

**IT IS SO ORDERED.**

Dated: May 5, 2005

    /s/ Maxine M. Chesney
MAXINE M. CHESNEY
United States District Judge